**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**Eastern Division**

| | | |
|---|---|---|
| ELIM ROMANIAN PENTECOSTAL CHURCH, and LOGOS BAPTIST MINISTRIES, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| v. | ) ) | |
| JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois, | ) ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF,**
**TEMPORARY RESTRAINING ORDER, PRELIMINARY AND**
**PERMANENT INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiffs, ELIM ROMANIAN PENTECOSTAL CHURCH, and LOGOS BAPTIST MINISTRIES (collectively, "Churches"), sue Defendant, JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois ("Governor Pritzker" or the "State"), and allege:

**URGENCIES JUSTIFYING TEMPORARY RESTRAINING ORDER**

1. In their Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order (TRO), Plaintiffs seek a TRO restraining enforcement against Plaintiffs of the various COVID-19 orders issued by Governor Pritzker and other State officials purporting to prohibit Plaintiffs, on pain of criminal sanctions, from gathering in-person at Plaintiffs' Churches for worship services that include more than 10 people, regardless of whether Plaintiffs meet or exceed the social distancing and hygiene guidelines pursuant to which the State disparately and discriminatorily allows so-called "essential" commercial and non-religious entities (*e.g.*, liquor stores, marijuana dispensaries, warehouse clubs, and 'big box' stores) to accommodate

large crowds and masses of persons without scrutiny or the 10-person limit. **Governor Pritzker has made it clear that churches, such as Plaintiffs, will not be able to hold in-person gatherings of more than 10 people until Phase 4 of his Restore Illinois plan, and that gatherings of more than 50 cannot take place until Phase 5—which he has stated may take more than 1 year to achieve, and will only be available if there is some vaccine widely available.**

2.      As shown in the verified allegations below, Governor Pritzker's Executive Orders relating to COVID-19 have been interpreted, applied, and enforced, including against Plaintiffs, such that Plaintiffs have been forced not to hold in-person religious services at their churches and forced to prohibit their congregants from attending their houses of worship.

3.      At around the same time as Governor Pritzker's Executive Orders surrounding COVID-19 were being used to threaten criminal sanctions on Plaintiffs, officials in other jurisdictions had similarly threatened to impose criminal sanctions on other religious gatherings. In Louisville, Kentucky, for example, the government threatened to use police to impose criminal sanctions on those individuals found in violation of similar COVID-19 orders and threatened to impose various sanctions on individuals found in violation of such orders. The United States District Court for the Western District of Kentucky found that the mere threat of such criminal sanction warranted a TRO. *See On Fire Christian Center, Inc. v. Fischer*, No. 3:20-cv-264-JRW, 2020 WL 1820249 (W.D. Ky. Apr. 11, 2020) [hereinafter *On Fire*]. The *On Fire* TRO enjoined the Mayor of Louisville from "**enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on drive-in church services at On Fire**." *Id.* at *1 (emphasis added).

4.      In fact, the Illinois State Police—acting under the direction of Governor Pritzker's orders—have publicly declared that they would enforce the Governor's orders and have threatened to impose criminal sanctions on those found in violation of them.

5.      Additionally, the Governor of Kansas had imposed a similar restriction on religious gatherings in Kansas, stating that gatherings of more than 10 individuals are prohibited, including religious gatherings. On April 18, 2020, the United States District for the District of Kansas issued a TRO enjoining Kansas officials from enforcing its discriminatory prohibition on religious gatherings and required the government to treat "religious" worship services the same as other similar gatherings that are permitted. *See First Baptist Church. v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, *6–7 (D. Kan. Apr. 18, 2020) [hereinafter *First Baptist*]. The *First Baptist* TRO specifically stated that the government's disparate treatment of religious gatherings was a violation of the Free Exercise Clause because it showed that "**religious activities were specifically targeted for more onerous restrictions than comparable secular activities**," and that the churches had shown irreparable harm because they would "be prevented from gathering for worship at their churches" during the pendency of the executive order. *Id.* at *7–8 (emphasis added).

6.      In discussing the Kansas orders—which imposed a 10-person limit on in-person gatherings similar to Governor Pritzker's orders here—the court said that specifically singling out religious gatherings for disparate treatment while permitting other non-religious activities "show[s] that these executive orders expressly target religious gatherings on a broad scale and are, therefore, not facially neutral," *First Baptist*, 2020 WL 1910021, at *7, and—much like here— "churches and religious activities appear to have been singled out among essential functions for stricter treatment. **It appears to be the only essential function whose core purpose—association for the purpose of worship—had been basically eliminated**." *Id.* (emphasis added). Thus, the court found that a TRO was necessary, and that Kansas should be enjoined from enforcing its

orders' disparate terms against churches. Indeed, "**it goes without saying that the government could not lawfully expressly prohibit individuals from meeting together for religious services**." *Id.* at \*6 (emphasis added).

7.       Additionally, the Sixth Circuit of Appeals has issued an emergency injunction pending appeal prohibiting the Kentucky Governor from enforcing prohibitions on religious worship services. *See Maryville Baptist Church, Inc. v. Beshear*, -- F.3d --, 2020 WL 2111316 (6th Cir. May 2, 2020). In that appeal challenging orders similar to Governor Pritzker's orders here, the Sixth Circuit stated that "[t]he Governor's actions substantially burden the congregants' sincerely held religious practices—**and plainly so**. . . . **Orders prohibiting religious gatherings, enforced by police officers telling congregants they violated a criminal law and by officers taking down license plate numbers, amount to a significant burden on worship gatherings**." 2020 WL 2111316, at \*2 (emphasis added). Additionally, "[t]he way the orders treat comparable religious and non-religious activities suggests that they do not amount to the least restrictive way of regulating the churches." *Id.* "Outright bans on religious activity alone obviously count. So do general bans that cover religious activity when there are exceptions for comparable secular activities." *Id.*, at \*3. In discussing the prohibitions on religious gatherings, the Sixth Circuit posed several questions of equal import here:

> Assuming all of the same precautions are taken, why is it safe to wait in a car for a liquor store to open but dangerous to wait in a car to hear morning prayers? **Why can someone safely walk down a grocery store aisle but not a pew?** And why can someone safely interact with a brave deliverywoman but not with a stoic minister? **The Commonwealth has no good answers. While the law may take periodic naps during a pandemic, we will not let it sleep through one.**

*Id.*, at \*4 (emphasis added).

8.       Because the prohibition on religious gatherings substantially burdened Maryville Baptist's sincerely held religious beliefs and was not the least restrictive means, the Sixth Circuit

issued an injunction pending appeal enjoining the Kentucky Governor from enforcing his unconstitutional orders. *Id.*, at *5.

9. Plaintiffs' congregants are also threatened with criminal sanctions and penalties if, at any time, any number of individuals gather together for in-person worship services at Plaintiffs' churches, and regardless of whether social distancing, enhanced sanitization, and personal hygiene practices are followed. Because of the government threat of criminal sanction, Plaintiffs were forced not to host services on Easter Sunday, the most treasured day in Christianity.

10. Absent emergency relief from this Court, Plaintiffs, their pastors, and all congregants will suffer immediate and irreparable injury from the threat of criminal prosecution for the mere act of engaging in the free exercise of religion and going to church. **Indeed, if Plaintiffs, their pastors, or their members do not subscribe to what Governor Pritzker has prescribed as orthodox in a worship service, they risk becoming criminals in the State.** A temporary restraining should issue.

## **INTRODUCTION**

11. Due to the unprecedented nature of the 2019 novel coronavirus disease (COVID-19) and the indisputable health tragedy the disease has wrought on our great Republic and those victims suffering under its yoke, there are those who may find it "tempting to hold that First Amendment rights should acquiesce to national security in this instance." *Tobey v. Jones*, 706 F.3d 379, 393 (4th Cir. 2013). One could be forgiven for hastily reaching such a conclusion in such uncertain times, but "our Forefather Benjamin Franklin warned against such a temptation by opining that those who can give up essential liberty to obtain a little temporary safety, deserve neither liberty nor safety." *Id.*

12. When the great American experiment was first implemented, our revered Founders took pains to note that the Constitution—and all of the rights it recognized and enshrined—was

instituted "in order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defense, promote the general Welfare, and **secure the Blessings of Liberty to ourselves and our Posterity**." U.S. Const. Pmbl. (emphasis added). To this very day, "we continue to strive toward '[that] more perfect union.'" *Smith v. City of New Smyrna Beach*, No. 6:110cv01110-Orl-37KRS, 2013 WL 5230659, *1 (M.D. Fla. Sept. 16, 2013). That work is not easy, and governments acting in good faith can and sometimes do miss the mark. This is such a case.

13. Recognizing that times of crisis would arise, that such times might lead governments to seek to repress precious freedoms, and that the Republic's survival depended upon defeating such repressive instincts, the genius of our founding document is that it placed explicit protections into the text of the Bill of Rights. And, importantly, "[o]ur Bill of Rights placed our survival on firmer ground—that of freedom, not repression." *Konigsberg v. State Bar of California*, 366 U.S. 36, 79 (1961) (Black, J., dissenting).

14. During times of national crisis, such as the current uncertainty arising from COVID-19, "the fog of public excitement obscures the ancient landmarks set up in our Bill of Rights." *American Communist Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 453 (1950) (Black, J., dissenting). But, where the fog of public excitement is at its apex, "the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937). Without doubt, "[t]herein lies the security of the Republic, the very foundation of constitutional government." *Id.*

15. It is beyond cavil that our commitment to our founding principles is most tested and best calculated during times of crisis and uncertainty. Indeed, "[t]imes of crisis take the truest measure of our commitment to constitutional values. **Constitutional values are only as strong as our willingness to reaffirm them when they seem most costly to bear**." *Hartness v. Bush*, 919

F.2d 170, 181 (D.C. Cir. 1990) (Edwards, J., dissenting) (emphasis added). Our willingness to reaffirm our staunch commitment to our fundamental freedoms is imperative to the very survival of the American experiment. For, "[h]istory reveals that the initial steps in the erosion of individual rights are usually excused on the basis of an 'emergency' or threat to the public. **But the ultimate strength of our constitutional guarantees lies in the unhesitating application in times of crisis and tranquility alike**." *United States v. Bell*, 464 F.2d 667, 676 (2d Cir. 1972) (Mansfield, J., concurring) (emphasis added).

16.     Plaintiffs bring this case to restrain the troubling transgression of their fundamental and cherished liberties wrought by the imposition of Governor Pritzker's orders surrounding COVID-19. Plaintiffs seek not to discredit or discard the government's unquestionable interest in doing that task for which it was instituted—protecting the citizenry. But, as is often true in times of crisis, Plaintiffs respectfully submit that in an effort to uphold his sworn duties Governor Pritzker has stepped over a line the Constitution does not permit. Because of that, Plaintiffs bring this action to ensure that this Court safeguards the cherished liberties for which so many have fought and died. For, "**[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be discarded**." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 483 (1934) (Sutherland, J., dissenting) (emphasis added). Plaintiffs pray unto the Court that it not permit the cherished and fundamental liberties enshrined in the Constitution to be another tragic casualty of COVID-19.

17.     Indeed, Plaintiffs and many of their members chose America as their homeland after fleeing communist oppression in Romania that, much like the COVID-19 Orders at issue here, targeted religious gatherings, houses of worship, and communal exercise of their religion and faith and imposed criminal sanctions for defiance of such prohibitions.

18.     Some of the pastors and members of Plaintiffs' churches experienced such persecution personally, and had hoped to never experience it again in the great experiment of American freedom.

## PARTIES

19.     Plaintiff ELIM ROMANIAN PENTECOSTAL CHURCH is a not-for-profit corporation incorporated under the laws of the State of Illinois with its principal place of business at 4850 N. Bernard Street, Chicago, Illinois 60625.

20.     Plaintiff LOGOS BAPTIST MINISTRIES is a not-for-profit corporation incorporated under the laws of the State of Illinois with its principal place of business at 7280 North Caldwell Avenue, Niles, Illinois 60714.

21.     Defendant, JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois ("Governor Pritzker" or the "State"), is responsible for enacting and enforcing the COVID-19 Executive Orders and other Orders at issue in this litigation. Governor Pritzker is sued in his official capacity.

## JURISDICTION AND VENUE

22.     This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.* This action also arises under Article I, Sections 3, 4, and 5 the Constitution of the State of Illinois, and the Illinois Religious Freedom Restoration Act.

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

25.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and is authorized to grant a temporary restraining order and injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

26.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

### A.     GOVERNOR PRITZKER'S EXECUTIVE ORDERS AND RELATED ORDERS FROM THE STATE OF ILLINOIS.

27.     On March 9, 2020, in response to COVID-19, Governor Pritzker issued a Gubernatorial Disaster Proclamation, which declared a state of emergency in the State of Illinois. A true and correct copy of the March 9th Proclamation is attached hereto as **EXHIBIT A** and incorporated herein.

28.     In the Emergency Proclamation, Governor Pritzker stated that COVID-19 represents a public health emergency and directed various government agencies to implement certain restrictions and orders to facilitate the State's response.

29.     On March 13, 2020, Governor Pritzker issued Executive Order 2020-04 stating that "all public and private gatherings in the State of Illinois of 1,000 or more people are cancelled." A true and correct copy of Executive Order 2020-04 is attached hereto as **EXHIBIT B** and incorporated herein.

30.     On March 16, 2020, Governor Pritzker issued Executive Order 2020-07, which bans "all public and private gatherings in the State of Illinois of 50 or more people." A true and correct copy of Executive Order 2020-07 is attached hereto as **EXHIBIT C** and incorporated herein.

31.     Executive Order 2020-07 explicitly states that its prohibitions apply to "faith-based events" that "bring[] together 50 or more people in a single room or a single space at the same time." But, the plain langue of the order excludes so-called "essential" services, such as grocery stores and gas stations.

32.     Executive Order 2020-07 also directs various government agencies, including the Illinois State Police, to use all available resources "to enforce the provisions of this Executive Order."

33.     On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, which purports to mandate all individuals in the State of Illinois to "stay at home or at their place of residence." A true and correct copy of Executive Order 2020-10 is attached hereto as **EXHIBIT D** and incorporated herein. The stay-at-home mandate exempts "Essential Travel," including for access to "Essential Activities" and "Essential Businesses and Operations."

34.     Executive Order 2020-10 states that "[a]ll public and private gatherings of **any number** of people . . . are prohibited" (emphasis added), and also (inconsistently) that "any gathering of more than **ten** people is prohibited," unless otherwise permitted by the Executive Order. But, the order exempts from the gathering limitations "Essential Businesses and Operations," comprising health, human services, governmental, and infrastructure operations, and **23 categories of exempted businesses** including, *inter alia*, grocery stores, alcoholic beverage stores, hardware stores, cannabis stores, gas stations, law firms and professional businesses, labor unions, and hotels, and also including warehouse, supercenter, and 'big box' stores combining several categories.

35.     The only limitation placed on so-called "Essential Businesses and Operations" is that they—"[t]o the greatest extent feasible" and "where possible"—comply with social distancing and hygiene recommendations.

36.     On April 1, 2020, Governor Pritzker issued Executive Order 2020-18, which continued the prohibitions of the previous executive orders through April 30, 2020. A true and correct copy of Executive Order 2020-18 is attached hereto as **EXHIBIT E** and incorporated herein.

37.     On April 2, 2020, Governor Pritzker issued another Disaster Proclamation, extending his purported authority to issue emergency declarations in response to COVID-19. A true and correct copy of the April 2 Proclamation is attached hereto as **EXHIBIT F** and incorporated herein.

38.     On April 30, 2020, Governor Pritzker issued another Disaster Proclamation, extending until May 30, 2020 the original disaster proclamation and purporting to extend his authority to continue issuing executive orders related to COVID-19. A true and correct copy of the April 30th Proclamation is attached hereto as **EXHIBIT G** and incorporated herein.

39.     On April 30, 2020, Governor Pritzker also issued Executive Order 2020-32, which effectively replaced Executive Order 2020-10, and which continues to prohibit "[a]ll public and private gatherings of any number of people" and (still inconsistently) "any gathering of more than ten people." A true and correct copy of Executive Order 2020-32 is attached hereto as **EXHIBIT H** and incorporated herein.

40.     Executive Order 2020-32 also continues to require all individuals to stay in their homes and places of residence except "for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations."

41.     For the first time, Executive Order 2020-32 adds to "Essential Activities" for which individuals may leave their homes or places of residence "engag[ing] in the free exercise of religion, provided that such exercise must comply with Social Distancing Requirements and the limit on gatherings of more than ten people." The order also states that "[r]eligious organizations

and houses of worship are encouraged to use online or drive-in services to protect the health and safety of their congregants."

42.     So-called "Essential Businesses and Operations" are permitted to continue accommodate large numbers of people without the 10-person limit imposed on religious gatherings, subject only to—"to the greatest extent possible" and "where possible"—social distancing and other hygiene precautions and an occupancy limit of 50% of building capacity for retail stores.

43.     Executive Order 2020-32 continues to recognize a list of **23 categories of exempted businesses as "Essential Businesses and Operations**," including, *inter alia*, grocery stores, alcoholic beverage stores, hardware stores, cannabis stores, gas stations, law firms and professional businesses, labor unions, and hotels, and also including warehouse, supercenter, and 'big box' stores combining several categories.

44.     On April 30, 2020, Governor Pritzker also issued Executive Order 2020-33, continuing through May 29, 2020, *inter alia*, Executive Orders 2020-04 and 2020-07. A true and correct copy of Executive Order 2020-33 is attached hereto as **EXHIBIT I** and incorporated herein.

45.     On May 5, 2020, Governor Pritzker released his "Restore Illinois" plan, which purports to set stages for the reopening of churches and religious gatherings in Illinois. A true and correct copy of Restore Illinois is attached hereto as **EXHIBIT J** and incorporated herein.

46.     Restore Illinois states that Phases 1, 2, and 3 will continue to limit in-person gatherings to 10 or fewer people, with the Phase 3 limit "subject to change based on latest data & guidance."

47.     Restore Illinois does not contemplate permitting religious gatherings of more than 10 people until Phase 4, when "[g]atherings of 50 people or fewer are allowed with this limit

subject to change based on latest data and guidance," and if Governor Pritzker determines it is appropriate to permit such gatherings. Also, beginning Phase 4 this plan "can and will be updated" and is "subject to change" at any time and in the Governor's discretion.

48.     Restore Illinois does not contemplate permitting gatherings of more than 50 people until Phase 5, when "[l]arge gatherings of all sizes can resume," but Phase 5 will not occur until "a vaccine is developed," "a treatment option is readily available," or "there are no new cases over a sustained period."

49.     Restore Illinois is merely "an initial framework" with all criteria subject to change, without commitments to timing, and contemplating backwards movement to prior phases as well as forward movement to new phases. To be sure, in his press conference on May 6, 2020, Governor Pritzker made it clear that in-person gathering limitations will apply to churches throughout the phased openings, and that it might take more than 12 to 18 months for churches to be permitted to have over 50 persons present, regardless of the sizes of facilities and whether social distancing may be effected. *See Gov. Pritzker's Coronavirus (COVID-19) Press Conference, Wednesday, May 6, 2020*, State of Illinois Coronavirus (COVID-19) Response, available at https://coronavirus.illinois.gov/s/news-archive, and https://vimeo.com/415693668 (last visited May 7, 2020).

50.     Plaintiffs hereinafter refers to Executive Order 2020-04, Executive Order 2020-07, Executive Order 2020-10, Executive Order 2020-18, Executive Order 2020-32, and Executive Order 2020-33, the relevant disaster Proclamations, and the Restore Illinois plan (EXHIBITS A–J) collectively as the "GATHERING ORDERS."

**B. THE STATE'S ENFORCEMENT OF GOVERNOR PRITZKER GATHERING ORDERS.**

51. On April 8, 2020, the Illinois State Police issued an enforcement guidance document (the "ISP Enforcement Guidance") indicating that it will enforce Governor Pritzker's GATHERING ORDERS against churches and individuals found in violation of them. A true and correct copy of the ISP Enforcement Guidance is attached hereto as **EXHIBIT K** and incorporated herein.

52. The ISP Enforcement Guidance states that the State Police are "free to use their training to disperse the crowd" found in violation of Governor Pritzker's GATHERING ORDERS.

53. The ISP Enforcement Guidance further states that the State Police can fill out "[s]top cards and field reports" concerning those found in violation of the GATHERING ORDERS, and that non-compliance with the GATHERING ORDERS may result in misdemeanor citations being issued for the offenses of Reckless Conduct and Disorderly Conduct under the Illinois code.

54. Through its ISP Enforcement Guidance, the Illinois State Police has unquestionably demonstrated that it intends to enforce the GATHERING ORDERS, including against Plaintiffs and their religious services.

**C. PLAINTIFFS' CHURCHES SERVICES CAN AND WILL COMPLY WITH SOCIAL DISTANCING AND PERSONAL HYGIENE RECOMMENDATIONS.**

55. On Saturday May 2, 2020, Plaintiffs joined in a letter sent to Governor Pritzker informing him that they are willing to voluntarily comply with social distancing and personal hygiene practices for their in-person worship services. A true and correct copy of that letter is attached hereto as **EXHIBIT L** and incorporated herein.

56.     In their letter, Plaintiffs stated that they would incorporate all of the following into each of their in-person worship services: (1) reduced seating for in-person worship services; (2) churches with moveable chairs will remove some of the chairs to maintain proper social distancing; (3) marking chairs or pews for use or non-use, and/or ushers' seating people with social distancing guidelines (allowing family units to be seated together); (4) prior to and following any in-person service, facilities will be sanitized; (5) attendees will be advised that, if they choose, they may wear masks and/or gloves; (6) attendees will be advised not to engage in hand shaking or other physical contact; (7) hand sanitizer will be available for use throughout the facility, and each person may be given a squirt of sanitizer or a sanitizer wipe upon entering; (8) selected points of entry and exit separated from each other establishing a one-way traffic pattern; (9) doors propped open or held open by ushers to prevent the need for congregants to touch doors while entering and exiting the church or sanctuary; and (10) asking anyone with any symptoms of COVID-19, anyone who works in healthcare facilities that treat COVID-19 patients, and those that are elderly and/or with auto-immune issues to forego our in-person gatherings for a time.

57.     Plaintiff Elim Romanian Pentecostal Church has a campus of approximately 40,000 square feet, with 750 seats in its main auditorium and an additional 550 seats in overflow rooms (1,300 total seats).

58.     Plaintiff Logos Baptist Ministries has a campus of approximately 36,000 square feet, with 425 seats in its main auditorium and 100 seats available in an overflow room (525 total seats.

59.     Plaintiffs' churches, and many others like them, could each easily accommodate many more than 10 persons in a worship service while still observing all social distancing and safety precautions imposed by Governor Pritzker's GATHERING ORDERS (*i.e.*, "to the greatest extent feasible" or "when possible" for exempted businesses), and Plaintiffs can and would

practice the stringent social distancing and personal hygiene protocols outlined in their May 2, 2020 letter to Governor Pritzker.

### D. LESS RESTRICTIVE ALTERNATIVES ARE AVAILABLE TO GOVERNOR PRITZKER.

60. Despite Governor Pritzker's insistence that in-person religious gatherings of more than 10 people cannot continue because they would spread COVID-19, the State has failed to consider other, substantially less restrictive alternatives to an absolute prohibition on such "religious" gatherings.

61. Like the State of Illinois, the State of Florida has issued stay-at-home executive orders and required the closure of all so-called "non-essential" businesses without unnecessarily discriminating against religious gatherings. On April 1, 2020, Florida Governor Ron DeSantis issued Executive Order 20-91, which **included "religious services conducted in churches, synagogues, and houses of worship" as essential activities permitted to continue subject to social distancing and personal hygiene guidelines**. A true and correct copy of Florida Executive Order 20-91 is attached hereto as **EXHIBIT M** and incorporated herein.

62. The State of Indiana has likewise issued stay-at-home executive orders and required the closure of all so-called "non-essential" businesses without unnecessarily discriminating against religious gatherings. Governor Eric. J. Holcomb's Executive Order 20-08 declared that "[r]eligious facilities, entities and groups, and religious gatherings" are essential and may continue to operate provided they follow appropriate social distancing and personal hygiene practices. A true and correct copy of Indiana's Executive Order 20-08 is attached hereto as **EXHIBIT N** and incorporated herein.

63. The State of Arizona, in Executive Order 2020-18, classified "[e]ngaging in constitutionally protected activities such as speech and religion" as essential activities, subject to

a flexible requirement that such engagement be "conducted in a manner that provides appropriate physical distancing to the extent feasible." The Arizona Attorney General, in Opinion I20-008, interpreted such essential activities clearly to include assembling for religious worship. True and correct copies of Arizona Executive Order 2020-18 and Arizona Attorney General Opinion I20-008 are attached hereto as **EXHIBIT O** and **EXHIBIT P**, respectively, and incorporated herein.

64.     The State of Alabama, in its final Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19, issued April 3, 2020, exempts individuals attending religious worship services in person subject to certain requirements and permits "drive-in" worship services without limitation. A true and correct copy of the Alabama Order is attached hereto as **EXHIBIT Q** and incorporated herein.

65.     The State of Arkansas has likewise exempted "places of worship" from its Executive Order 20-13 imposing restrictions to prevent the spread of COVID-19, provided that they engage in adequate social distancing and personal hygiene practices. A true and correct copy of the Arkansas Executive Order is attached hereto as **EXHIBIT R** and incorporated herein.

66.     The State of Connecticut has similarly shown that other, less restrictive alternatives are available. In Executive Order No. 7N, Governor Ned Lamont permitted religious services to continue to meet, but limited their in-person gatherings to 50 people, as opposed to the six-person limit applicable to other gatherings. A true and correct copy of the Connecticut Executive Order No. 7N is attached hereto as **EXHIBIT S** and incorporated herein.

67.     The State of Texas has likewise issued certain COVID-19 orders, but has provided explicit protections to religious gatherings and issued directives outlining the protection for religious freedom, even in these times of uncertainty. A true and correct copy of the Texas Guidance for Houses of Worship is attached hereto as **EXHIBIT T** and incorporated herein. In

17

that Guidance, Texas notes that religious assemblies and houses of worship are "essential services" and that in-person gatherings are permissible if social distancing and personal hygiene practices are followed.

68.     The State of Ohio has likewise issued certain COVID-19 orders, including the Ohio Department of Health's Stay Safe Ohio Order. A true and correct copy of the Ohio order is attached hereto as **EXHIBIT U** and incorporated herein. Ohio's order likewise states that the stay at home mandate "does not apply to religious facilities, entities and groups and religious gatherings."

69.     Numerous other states have similarly permitted religious gatherings to be treated equally with non-religious gatherings.

70.     As these other states have demonstrated, Governor Pritzker can continue to pursue the State's objective of preventing the spread of COVID-19 without unnecessarily treating religious gatherings in a discriminatory manner, and the State has numerous other, less restrictive alternatives available to it to do so.

71.     **Governor Pritzker has neither tried without success nor considered and ruled out for good reason these less restrictive alternatives**.

72.     Governor Pritzker has constitutionally permissible alternatives available, but has failed to attempt to achieve the State's purported goals without unnecessarily interfering with constitutionally protected activities.

### E.     IRREPARABLE INJURY TO PLAINTIFFS FROM GOVERNOR PRITZKER'S GATHERING ORDERS.

73.     Despite being capable of following all social distancing and personal hygiene protocols recommended by the CDC and specified in the GATHERING ORDERS, Plaintiffs have been explicitly targeted, singled out, and punished for participating in an in-person religious gathering when exempted commercial and non-religious entities may accommodate gatherings,

crowds, and masses of people without numeric limitation, and without targeting or punishment by the government.

74.     As a result of Governor Pritzker's GATHERING ORDERS, Plaintiffs have suffered and are suffering irreparable injury by having their pastors, members, and all attendees of future services threatened with criminal sanction.

75.     As a result of Governor Pritzker's GATHERING ORDERS, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights of free exercise, assembly, and speech.

76.     As a result of Governor Pritzker's GATHERING ORDERS, Plaintiffs have suffered and are suffering irreparable injury by the infringement of their constitutionally protected rights to be free from government hostility toward religion.

77.     As a result of the Governor Pritzker's GATHERING ORDERS and the explicit threats from the Illinois State Police, Plaintiffs have suffered and are suffering irreparable injury by the continuing threat of criminal sanctions on Plaintiffs' pastors and congregants for merely exercising their constitutionally protected freedoms.

78.     Due to the explicit threats of Governor Pritzker's GATHERING ORDERS and the announcements by the Illinois State Police, Plaintiffs have been forced to self-censor, cease their religious worship services, and violate their sincerely held religious beliefs.

G.     **PLAINTIFFS' ATTEMPTS TO SECURE RELIEF WITHOUT JUDICIAL INTERVENTION WERE IGNORED AND FURTHER ATTEMPTS TO NOTIFY THE STATE ARE FUTILE AND IMPRACTICAL BEFORE THIS SUNDAY.**

79.     In addition to the May 2, 2020 letter to Governor Pritzker joined by Plaintiffs (EXHIBIT L), on May 7, 2020, prior to the commencement of the instant action, Plaintiffs' counsel sent by email and facsimile a demand letter to Governor Pritzker (via Lieutenant Governor Juliana

19

Stratton), with copies to the Governor's General Counsel and the Illinois Attorney General, in which Plaintiffs' counsel demanded, by 3:00 P.M. on May 7, written confirmation that the State has withdrawn the ban on religious gatherings embodied in the GATHERING ORDERS, will allow individuals to attend church services at Plaintiffs' churches in an equal manner with other essential and non-essential business permitted to continue provided certain social distancing and personal hygiene practices are followed, and will cease enforcement of any church gathering ban against members and/or attendees of Plaintiffs' church services. A true and correct copy of the demand letter is attached hereto as **EXHIBIT V**. No written response from Governor Pritzker's office was received by the requested deadline, or at any time prior to the filing of this Verified Complaint.

80. The failure of Governor Pritzker or his officials to confirm withdrawal or cessation of enforcement of the discriminatory prohibitions on religious services in the GATHERING ORDERS and applied to Plaintiffs shows that Plaintiffs' irreparable injury to their constitutionally protected freedoms is ongoing.

81. The failure of Governor Pritzker or his officials to respond to Plaintiffs' communication also shows that notice and an opportunity to respond to this lawsuit cannot be effectuated, and would be futile, prior to this Sunday's worship activities at Plaintiffs' respective churches, when Governor Pritzker or other State officials will again interfere with the constitutional liberties of Plaintiffs and their congregants absent a temporary restraining order from this Court.

## CONSTITUTIONAL CLAIMS

### COUNT I—THE GATHERING ORDERS VIOLATE PLAINTIFFS' RIGHTS TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT

82.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

83.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

84.     Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

85.     Plaintiffs have sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

86.     The GATHERING ORDERS, on their face and as applied, target Plaintiffs' sincerely held religious beliefs by prohibiting religious gatherings.

87.     The GATHERING ORDERS, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

88. The GATHERING ORDERS, on their face and as applied, place Plaintiffs in an irresolvable conflict between compliance with the GATHERING ORDERS and their sincerely held religious beliefs.

89. The GATHERING ORDERS, on their face and as applied, put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings and tenets of Scripture concerning the assembling of Believers.

90. The GATHERING ORDERS, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

91. The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs.

92. The State lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

93. Even if the GATHERING ORDERS' restriction on religious gatherings were supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

94. The GATHERING ORDERS, on their face and as applied, fail to accommodate Plaintiffs' sincerely held religious beliefs.

95. The GATHERING ORDERS, on their face and as applied, specifically target Plaintiffs' sincerely held religious beliefs and set up a system of individualized exemptions that permits certain other similarly situated businesses or non-religious entities to continue operations under certain guidelines while prohibiting religious gatherings, such as Plaintiffs' church and worship services, from operating with similar guidelines.

96.     The GATHERING ORDERS, on their face and as applied, constitute an express and overt religious gerrymander.

97.     The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

98.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against the State as hereinafter set forth in their prayer for relief.

## COUNT II—THE GATHERING ORDERS VIOLATE PLAINTIFFS' RIGHTS TO PEACEABLE ASSEMBLY UNDER THE FIRST AMENDMENT

99.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

100.     The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging the right of the people peaceably to assemble.

101.     The GATHERING ORDERS, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' right to assemble.

102.     The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

103.     The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of content.

104.    The State lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of differential standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

105.    The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the orders.

106.    The GATHERING ORDERS, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

107.    The GATHERING ORDERS, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

108.    The GATHERING ORDERS, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected right to assemble.

109.    The GATHERING ORDERS, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Pritzker and his designees, to apply or not apply the GATHERING ORDERS in a manner to restrict free assembly.

110.    The GATHERING ORDERS, on their face and as applied, are underinclusive by limiting their gathering prohibitions to only certain businesses or organizations deemed "non-essential."

111.    The GATHERING ORDERS, on their face and as applied, are unconstitutionally vague and overbroad as they chill and abridge the free assembly rights of Plaintiffs.

112.    On their face and as applied, the GATHERING ORDERS' violation of Plaintiffs' right to free assembly have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

113.    Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## COUNT III - THE GATHERING ORDERS VIOLATE PLAINTIFFS' RIGHTS TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT

114.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

115.    The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' freedom of speech.

116.    The GATHERING ORDERS, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' speech.

117.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

118.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of content.

119.    The State lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

120.    The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the orders.

121. The GATHERING ORDERS, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

122. The GATHERING ORDERS, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

123. The GATHERING ORDERS, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected speech.

124. The GATHERING ORDERS, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Pritzker and his designees, to apply or not apply the GATHERING ORDERS in a manner to restrict free speech.

125. The GATHERING ORDERS, on their face and as applied, are underinclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non-essential."

126. The GATHERING ORDERS, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech rights of Plaintiffs.

127. On their face and as applied, the GATHERING ORDERS' violation of Plaintiffs' rights to free speech have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

128. Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## COUNT IV—THE GATHERING ORDERS VIOLATE
## THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT

129.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

130.    The Establishment Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the government from establishing a religion.

131.    The Establishment Clause also prohibits excessive government entanglement with religion.

132.    The Establishment Clause also prohibits the government from showing hostility towards religion and prohibits showing favoritism towards one religious sect over another or between non-religion and religion.

133.    The government mandated prohibition on "faith-based" or "religious" gatherings in the GATHERING ORDERS violates the Establishment Clause because the State of Illinois thereby dictates the manner in which Christians and churches must worship or worship online.

134.    The Establishment Clause does not permit the State of Illinois to dictate under penalty of criminal sanctions the manner, style, form, practices, or sacraments of religious worship and thereby impose its own version of religious worship on every church and citizen of the State.

135.    In fact, as the Supreme Court has unequivocally stated, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, **religion**, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added).

27

136. The State, through Governor Pritzker's GATHERING ORDERS, is purporting to prescribe what shall be orthodox in matters of religious worship, and is thus running roughshod over the Establishment Clause.

137. The GATHERING ORDERS, on their face and as applied, permit the State to display impermissible hostility towards religious gatherings.

138. The GATHERING ORDERS, on their face and as applied, impermissibly show favoritism towards certain non-religious gatherings over religious gatherings.

139. The GATHERING ORDERS, on their face and as applied, violate the Establishment Clause because they excessively entangle the government with religion.

140. The GATHERING ORDERS, on their face and as applied, purport to inform religious adherents and believers how they may choose to worship, assemble together, or engage in their religious freedoms.

141. The GATHERING ORDERS, on their face and as applied, purport to establish an acceptable method of religious practice and worship, place a numerical limitation on the scope of how such religious practice and worship may occur, and provide a government imprimatur for only certain forms of "permissible" worship.

142. The GATHERING ORDERS, on their face and as applied, demonstrate overt hostility to religious practice and worship that does not conform to government sanctioned religious exercises.

143. The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

144. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## COUNT V—THE GATHERING ORDERS VIOLATE
## PLAINTIFFS' RIGHTS TO EQUAL PROTECTION
## UNDER THE FOURTEENTH AMENDMENT

145.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

146.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

147.    The GATHERING ORDERS, on their face and as applied, are an unconstitutional abridgement of Plaintiffs' right to equal protection under the law, are not neutral, and specifically target Plaintiffs' and other religious gatherings for unequal treatment.

148.    The GATHERING ORDERS, on their face and as applied, are an unconstitutional abridgment of Plaintiffs' right to equal protection because they permit the State to treat Plaintiffs differently from other similarly situated businesses and non-religious entities on the basis of the content and viewpoint of Plaintiffs' gatherings.

149.    The GATHERING ORDERS create a system of exempt categories that permit essential businesses and gatherings to continue to operate with restriction or threat of sanction, and impose disparate treatment to those categories of businesses and gatherings called "non-essential."

150.    The GATHERING ORDERS system of categories represents disparate treatment based upon classification in violation equal protection.

151.    The GATHERING ORDERS, on their face and as applied, impermissibly discriminate between certain non-religious gatherings and religious gatherings.

152.     The State lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

153.     The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served.

154.     The GATHERING ORDERS, on their face and as applied, do not have a rational basis.

155.     The GATHERING ORDERS, on their face and as applied, are irrational and unjustifiable and impose irrational and unjustifiable restrictions on Plaintiffs' religious gatherings.

156.     The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

157.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against the State as hereinafter set forth in their prayer for relief.

**COUNT VI—THE GATHERING ORDERS VIOLATE
PLAINTIFFS' RIGHTS TO A REPUBLICAN FORM OF GOVERNMENT
UNDER THE GUARANTEE CLAUSE OF ARTICLE IV, § 4 OF
THE UNITED STATES CONSTITUTION**

158.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

159.     Article IV, § 4 of the United States Constitution requires the United States to guarantee to every citizen in the nation a republican form of government.

160. The Guarantee Clause's distinguishing feature is that the republican form of government it guarantees is the right of the people to choose their own governmental administration and pass their own laws.

161. As interpreted by the federal judiciary and prominent scholars, the Guarantee Clause mandates that the federal government guarantee a form of government for all citizens in which supreme power resides in a body of citizens entitled to vote and exercised by elected officers responsible to such citizens.

162. The GATHERING ORDERS' express, unilateral, and unequivocal exercises of purported executive authority over the constitutional rights of Plaintiffs deprive Plaintiffs of the right to select their own government administration, pass their own laws, and maintain a government administration directly responsible to the people, including by laws that are enacted by the legislature in constitutional recognition of the separation of powers.

163. The impermissible exercise of exclusive and unaccountable executive authority violates the Guarantee Clause of the United States Constitution.

164. The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

165. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

### COUNT VII—THE GATHERING ORDERS VIOLATE
### PLAINTIFFS' RIGHTS TO FREE EXERCISE OF RELIGION
### UNDER ARTICLE I, SECTION 3 OF THE CONSTITUTION OF ILLINOIS

166.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

167.    Article I, § 3 of the Constitution of Illinois states: "The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed, and no person shall be denied any civil or political right, privilege or capacity, on account of his religious opinions."

168.    Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

169.    Plaintiffs have sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

170.    The GATHERING ORDERS, on their face and as applied, target Plaintiffs' sincerely held religious beliefs by prohibiting religious gatherings.

171.    The GATHERING ORDERS, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

172. The GATHERING ORDERS, on their face and as applied, place Plaintiffs in an irresolvable conflict between compliance with the GATHERING ORDERS and their sincerely held religious beliefs.

173. The GATHERING ORDERS, on their face and as applied, put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings and tenets of Scripture concerning the assembling of Believers.

174. The GATHERING ORDERS, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

175. The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs.

176. The State lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

177. Even if the GATHERING ORDERS' restriction on religious gatherings were supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

178. The GATHERING ORDERS, on their face and as applied, fail to accommodate Plaintiffs' sincerely held religious beliefs.

179. The GATHERING ORDERS, on their face and as applied, specifically target Plaintiffs' sincerely held religious beliefs and set up a system of individualized exemptions that permits certain other similarly situated businesses or non-religious entities to continue operations under certain guidelines while prohibiting religious gatherings, such as Plaintiffs' church and religious gatherings, from operating with similar guidelines.

180. The GATHERING ORDERS, on their face and as applied, constitute an express and overt religious gerrymander.

181. The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

182. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against the State as hereinafter set forth in their prayer for relief.

## COUNT VIII—THE GATHERING ORDERS VIOLATE PLAINTIFFS' RIGHTS TO FREEDOM OF SPEECH AND ASSEMBLY UNDER ARTICLE I, SECTIONS 4–5 OF THE CONSTITUTION OF ILLINOIS

183. Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

184. Article I, Section 4 of the Constitution of Illinois states that "[a]ll persons may speak, write and publish freely."

185. Article I, Section 5 states that "[t]he people have the right to assemble in a peaceable manner."

186. The GATHERING ORDERS, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' speech and assembly.

187. The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

188. The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of content.

189. The State lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

190. The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the orders.

191. The GATHERING ORDERS, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

192. The GATHERING ORDERS, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

193. The GATHERING ORDERS, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected speech and right to assemble.

194. The GATHERING ORDERS, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Pritzker and his designees, to apply or not apply the GATHERING ORDERS in a manner to restrict free speech and assembly.

195. The GATHERING ORDERS, on their face and as applied, are underinclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non-essential."

196. The GATHERING ORDERS, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech and assembly rights of Plaintiffs.

197.    On their face and as applied, the GATHERING ORDERS' violation of Plaintiffs' rights to free speech and assembly have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

198.    Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against the State as hereinafter set forth in their prayer for relief.

## STATUTORY CLAIMS

## COUNT IX—THE GATHERING ORDERS VIOLATE PLAINTIFFS' RIGHTS UNDER THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

199.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

200.    The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc–2000cc-5 ("RLUIPA"), states that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution." 42 U.S.C. § 2000cc(a)(1). If the government does impose such a restriction, it must then demonstrate that such a burden on the religious assembly is supported by a compelling interest and is the least restrictive means to further that alleged interest.

201.    RLUIPA further mandates that no government "impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

202.    RLUIPA further states that "[n]o government shall impose or implement a land use regulation that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably

limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

203. Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that Plaintiffs are to follow its teachings.

204. Plaintiffs have sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

205. The GATHERING ORDERS, on their face and as applied, target Plaintiffs' sincerely held religious beliefs by prohibiting religious gatherings.

206. The GATHERING ORDERS, on their face and as applied, impermissibly and substantially burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

207. The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs.

208. The State lacks a compelling interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

209. Even if the GATHERING ORDERS' restrictions on religious gatherings was supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

210.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

211.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against the State as hereinafter set forth in their prayer for relief.

## COUNT X – THE GATHERING ORDERS VIOLATE PLAINTIFFS' RIGHTS UNDER THE ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT

212.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–81 above.

213.    Illinois's Religious Freedom Restoration Act prohibits the government from substantially burdening Plaintiffs' free exercise of religion. 775 I.L.C.S. §35/15. If the government does burden a person's sincerely held religious beliefs, it must demonstrated that it is in furtherance of a compelling government interest and is the least restrictive means of achieving that interest.

214.    Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

215.    Plaintiffs have sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

216.    The GATHERING ORDERS, on their face and as applied, target Plaintiffs' sincerely held religious beliefs by prohibiting faith-based gatherings.

217.    The GATHERING ORDERS, on their face and as applied, impermissibly and substantially burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and Defendant's imposed value system.

218.    The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs.

219.    Defendant lacks a compelling interest in the GATHERING ORDERS' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "non-life-sustaining" businesses or services.

220.    Even if the GATHERING ORDERS's restriction on faith-based gatherings was supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

221.    The State has not and cannot demonstrate a compelling government interest in treating Plaintiffs' faith-based or religious gatherings differently that other non-religious gatherings of so-called "non-life-sustaining" businesses or services.

222.    The State has not and cannot demonstrate that it has deployed the least restrictive means to further its purported compelling interest.

223.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

224.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendant as hereinafter set forth in their prayer for relief

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief as follows:

A. That the Court issue a Temporary Restraining Order restraining and enjoining Governor Pritzker, all State officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the GATHERING ORDERS or any other order to the extent any such order prohibits religious worship services or in-person church services at Plaintiffs' churches, if Plaintiffs meet the social distancing, enhanced sanitization, and personal hygiene guidelines pursuant to which the State allows so-called "essential" commercial and non-religious entities (*e.g.*, beer, wine, and liquor stores, warehouse clubs, 'big box," 'supercenter' stores, and marijuana dispensaries) to accommodate gatherings of persons without numerical limit. **To be clear, Plaintiffs merely seeks a TRO preventing Plaintiffs, their pastors, and their congregants from being subject to criminal sanctions for hosting in-person worship services on Sunday during which Plaintiffs will implement social distancing and hygiene protections on an equal basis with other non-religious gatherings**. In making such a request, Plaintiffs merely seek to be treated equally with other businesses, and seek only to be permitted to meet in person so long as they abide by social distancing, enhanced sanitizing, and personal hygiene recommendations that other businesses are allowed to follow and remain open.

B. That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Governor Pritzker, all State officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing the GATHERING ORDERS so that:

i.      The State will not apply the GATHERING ORDERS in any manner as to infringe Plaintiffs' constitutional and statutory rights by discriminating against their right to assembly, speech, free exercise of religion, equal protection, and all other constitutional and statutory rights outlined herein;

ii.     The State will apply the GATHERING ORDERS in a manner that treats Plaintiffs' religious gatherings on equal terms as gatherings for or in so-called "essential" businesses and non-religious entities;

iii.    The State will permit religious gatherings so long as they comply with the same social distancing and personal hygiene recommendations pursuant to which the State allows so-called "essential" commercial and non-religious entities (*e.g.*, beer, wine, and liquor stores, cannabis stores, warehouse clubs, and supercenters) to accommodate gatherings of persons without numerical limit under the GATHERING ORDERS;

iv.    The State will permit Plaintiffs the opportunity to comport their behavior to any further limitations or restrictions that the State may impose in any future modification, revision, or amendment of the GATHERING ORDERS or similar legal directive; and

v.     The State will not bring any enforcement, criminal, or other public health actions against Plaintiffs as threatened in Governor Pritzker's public statements.

C.     That the Court render a Declaratory Judgment declaring that the GATHERING ORDERS both on their face and as applied by the State are unconstitutional under the United States Constitution and Constitution of Illinois, and further declaring that:

i.      The State has violated Plaintiffs' rights to freedom of assembly by impermissibly prohibiting religious gatherings;

ii.     The State has violated Plaintiffs' rights to freedom of speech by impermissibly prohibiting religious gatherings;

iii.    The State has violated Plaintiffs' rights to free exercise of religion by impermissibly prohibiting religious gatherings, substantially burdening their sincerely held religious beliefs, applying criteria that are neither neutral nor generally applicable to religious and non-religious gatherings, by establishing a religious gerrymander against religious gatherings, and by establishing a system of individualized exemptions that exclude similarly situated non-religious gatherings from the prohibitions applicable to Plaintiffs' religious gatherings;

iv.    The State has violated Plaintiffs' rights to equal protection of the laws by impermissibly prohibiting religious gatherings, and by applying criteria that treats religious gatherings in a discriminatory and dissimilar manner as that applied to various non-religious gatherings;

v.     The State has violated the Establishment Clause by impermissibly demonstrating hostility towards religious gatherings and by impermissibly showing favoritism to certain non-religious gatherings;

vi.    The State has violated the Guarantee Clause by impermissibly exercising executive authority in an unconstitutional manner;

vii.   The State has violated the Religious Land Use and Institutionalized Persons Act by substantially and impermissibly burdening Plaintiffs' sincerely held religious beliefs and treating unequally as compared to other non-religious

assemblies or institutions, by imposing draconian prohibitions on Plaintiffs' sincerely held religious beliefs without a compelling government interest, and without deploying the least restrictive means to achieve any permissible government interest; and

viii. The State has violated the Illinois Religious Freedom Restoration Act by substantially and impermissibly burdening Plaintiffs' sincerely held religious beliefs and treating unequally as compared to other non-religious assemblies or institutions, by imposing draconian prohibitions on Plaintiffs' sincerely held religious beliefs without a compelling government interest, and without deploying the least restrictive means to achieve any permissible government interest

D. That the Court award Plaintiffs nominal damages for the violation of Plaintiffs' constitutional rights.

E. That the Court adjudge, decree, and declare the rights and other legal relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

F. That the Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

G. That the Court declare Plaintiffs are prevailing parties and award Plaintiffs the reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988.

H. That the Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Horatio G. Mihet
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org

*Pro hac vice applications pending

*Attorneys for Plaintiffs*

## **VERIFICATION**

I, Cristian Ionescu, am over the age of eighteen years and the Pastor of Elim Romanian Pentecostal Church, one of the Plaintiffs in this action. The statements and allegations that pertain to me and/or Plaintiff Elim Romanian Pentecostal Church or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Dated: May 7, 2020

/s/ Cristian Ionescu
Christian Ionescu

## <u>VERIFICATION</u>

I, Daniel Chiu, am over the age of eighteen years and the Pastor of Logos Baptist Ministries, one of the Plaintiffs in this action. The statements and allegations that pertain to me and/or Plaintiff Logos Baptist Ministries or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Dated: May 7, 2020

/s/ Daniel Chiu
Daniel Chiu