IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIM ROMANIAN PENTECOSTAL CHURCH & LOGOS BAPTIST MINISTRIES | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20 C 2782 |
| v. | ) ) | Judge Robert W. Gettleman |
| JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Elim Romanian Pentecostal Church ("Elim") and Logos Baptist Ministries ("Logos") brought a ten-count complaint against defendant Illinois Governor Jay Robert Pritzker under 42 U.S.C. § 1983, alleging that Governor Pritzker's emergency COVID-19 orders violated their rights under the First Amendment, the Religious Land Use and Institutionalized Persons Act, and the Illinois Religious Freedom Restoration Act. Defendant has moved to dismiss, arguing that plaintiffs' claims are moot, and sovereign immunity and qualified immunity bar plaintiffs' claims for nominal damages. (Doc. 67). For the reasons stated below, defendant's motion is granted.

## BACKGROUND

During the first few weeks of the COVID-19 pandemic, on April 30, 2020, Governor Pritzker issued Executive Order 2020-32 ("Order 32") to reduce transmission of the coronavirus SARS-CoV-2, which causes the disease COVID-19. That executive order required wearing a face covering in public places or when working, the cessation of all non-essential business and operations, and most importantly for the instant case, prohibited "[a]ll public and private

gatherings of any number of people occurring outside a single household or living unit" except for limited purposes. "[A]ny gathering of more than ten people is prohibited unless exempted…." Individuals were permitted to leave their residence only to perform certain "Essential Activities," including "to engage in the free exercise of religion." Order 32 further stated that parties were permitted to leave their residence: "To engage in the free exercise of religion, provided that such exercise must comply with Social Distancing Requirements and the limit on gatherings of more than ten people in keeping with CDC guidelines for the protection of public health."

On May 7, 2020, plaintiffs sued Governor Pritzker, challenging Order 32 to the extent it restricted religious gatherings to ten persons, arguing that it violated numerous of their federal constitutional rights, most notably the right to free exercise of religion contained in the First Amendment. When plaintiffs sued, rates of COVID-19 were sharply increasing in Illinois and there was "no known cure, no effective treatment and no vaccine." Elim Romanian Pentecostal Church v. Pritzker, -- F.Supp.3d --, 2020 WL 2468194 (N.D. Ill. May 2020). Plaintiffs immediately moved for a temporary restraining order and a preliminary injunction, which this court denied. Id. Plaintiffs then appealed that order.

Before the case could be argued on appeal, on May 29, 2020, Governor Pritzker replaced Order 32 with Executive Order 2020-38 ("Order 38"). Order 38 permitted the resumption of all religious services, making social distancing and a ten-person cap advisory only. On appeal, defendant argued that Order 38 made the suit moot, because "it gives the churches all of the relief they wanted from a judge." Elim Romanian Pentecostal Church v. Pritzker, 962 F.3d 341, 344 (7th Cir. 2020). In an opinion published on June 16, a mere 18 days after Governor Pritzker

issued Order 38, the Seventh Circuit noted that "the Governor could restore the approach of Executive Order 2002-32 as easily as he replaced it—and that the 'Restore Illinois Plan' (May 5, 2020) reserves the option of doing just this if conditions deteriorate." Id. The Seventh Circuit further stated:

> Voluntary cessation of the contested conduct makes litigation moot only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Otherwise the defendant could resume the challenged conduct as soon as the suit was dismissed. The list of criteria for moving back to Phase 2 (that is, replacing the current rules with older ones) shows that it is not absolutely clear that the terms of [Order 32] will never be restored. It follows that the dispute is not moot and we must address the merits of plaintiffs' challenge to [Order 32] even though it is no longer in effect.

Id. at 345 (internal citations omitted).

The Seventh Circuit proceeded to analyze Order 32, holding that "Illinois has not discriminated against religion and so has not violated the First Amendment" and affirming this court's earlier ruling that denied a preliminary injunction. Id. at 347. Plaintiffs unsuccessfully moved for a rehearing and rehearing en banc, and this court stayed the case pending those appeals. Plaintiffs subsequently sought relief from the Supreme Court. The Supreme Court declined to grant a writ of certiorari in a three-sentence order, stating in part: "The Illinois Department of Public Health issued new guidance on May 28, [2020]." 140 S.Ct. 2823. On April 16, 2021, this court lifted the stay and instructed defendant to file a responsive pleading.

Since May 29, 2020, Governor Pritzker has not imposed any restrictions on religious gatherings—despite surges of COVID-19 cases in the fall of 2020 and winter of 2021, during which only essential workers were vaccinated. Additionally, in January 2021, Governor Pritzker stated that he would not reimpose the ten-person limit on religious services for the duration of the pandemic. On June 11, 2021, Illinois transitioned to a full reopening. As of

July 9, 2021, over 49% of Illinoisans have been fully vaccinated, with many more receiving at least one dose of the two-dose vaccine.[1]

## DISCUSSION

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that plaintiffs' claims for injunctive and declaratory relief are moot, and that plaintiffs' request for nominal damages fails as a matter of law under principles of sovereign immunity and qualified immunity. The court will address each argument in turn.

Defendant first argues that plaintiffs' requests for injunctive relief and declaratory relief are moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" Already, Inc. v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiff's particular legal rights." Id.

However, a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." Id. "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. (citing Friends of the Earth,

---

[1] Ill. Dep't of Public Health, Covid-19 Vaccine Administration Data, https://www.dph.illinois.gov/covid19/vaccinedata?county=Illinois (last updated July 9, 2021).

Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167 (2000)); see also Elim Romanian Pentecostal Church, 962 F.3d at 345 ("Voluntary cessation of the contested conduct makes litigation moot only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.").

Defendant notes that Order 32 expired over a year ago, and that all superseding orders have included a categorical exemption for religion (meaning, no restrictions on religious activities). Governor Pritzker has also repeatedly affirmed that Illinois would not impose restrictions on religious activities, even during the height of the second wave of COVID-19 cases in the fall of 2020 and the winter of 2021. According to defendant, the case is moot, and any injunctive or declaratory relief "would effectively be for show." Further, defendant argues that it is absolutely clear that any executive orders restricting religion are not reasonably expected to recur. These arguments are both retrospective and prospective: Governor Pritzker did not reinstate any restrictions on religious activities in the fall and winter when COVID-19 cases were surging; and given that the state is now fully open and many people are vaccinated, he is extremely unlikely to do so going forward.

Plaintiffs respond with a slew of recent Supreme Court cases, arguing that their claims are not moot because Governor Pritzker retains power to reinstate his "unconstitutional regime." Yet every single Supreme Court case cited by plaintiffs is readily distinguishable. As a preliminary matter, none of cited cases' holdings relate to standing or mootness; rather, they address the issue of a preliminary injunction, particularly whether the plaintiffs would succeed on the merits. Thus, any and all discussions of standing or mootness are cursory dicta, or statements in a concurring opinion. Neither are binding on this court.

In addition to that threshold issue, the factual and legal concerns in the cited Supreme Court cases are quite different from those of the instant suit. For example, plaintiffs' three favorite cases, and the only ones worth discussing, South Bay United Pentecostal Church v. Newsom, 141 S.Ct. 716 (2021), Tandon v. Newsom, 141 S.Ct. 1294 (2021), and Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63 (2020) (per curiam), all involved preliminary injunction orders. In reviewing the requests for an injunction, the Supreme Court was persuaded by the fact that the plaintiffs were likely to succeed on the merits, because the COVID-19 orders were not narrowly tailored and discriminated against religion. In South Bay, three justices emphasized that Hollywood and other workplaces had secured exemptions from COVID-19 orders, but houses of worship did not. 141 S.Ct. 716, 719 (Gorsuch, J. statement) ("[O]nce more, we appear to have a State playing favorites during a pandemic, expending considerable effort to protect lucrative industries (casinos in Nevada; movie studios in California) while denying similar largesse to its faithful."). In Catholic Diocese, the Supreme Court was troubled by New York's COVID-19 order, which could "be viewed as targeting the ultra-Orthodox Jewish community," and otherwise singled out houses of worship for harsher treatment. 141 S.Ct. 63, 66 (internal citations omitted).[2] The same concerns also permeate the opinion in Tandon, 141 S.Ct. 1294, 1297 ("California treats some comparable secular activities more favorably than at-home religious exercise…."). These concerns are not present here. In fact, the Seventh Circuit in this very case found that Order 32 did not discriminate against religion.

---

[2] In addition to singling out one religious group, New York's COVID-19 scheme permitted non-essential businesses such as acupuncture facilities and plants manufacturing chemicals for electronics to remain open, while religious services were restricted to ten people or fewer.

More to the point, plaintiffs' brief makes a great deal over the fact that, in Tandon, California's COVID-19 order changed before the Supreme Court decided the case. 141 S.Ct. 1294, 1297 ("[E]ven if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case"). But California merely set an expiration date for the relevant order, which was set to expire after the Supreme Court published its opinion. Id. ("[A]lthough California officials changed the policy shortly after this case application was filed, the previous restrictions remain in place until April 15th, and officials with a track record of 'moving the goalposts' retain authority to reinstate those heightened restrictions at any time").[3] The other case involving a change in COVID orders is Catholic Diocese, and in that case, the order was changed from a ten-person limit to 50% capacity. Thus, the order was still in effect, just with a change in number of attendees. Despite plaintiffs' insistent arguments, there are no Supreme Court cases in which the order had been completely rescinded for a significant length of time, with no imminent or credible threat of reinstatement, before a court issued a ruling.

Here, the COVID-19 order restricting religious activities ended in May 2020, over 15 months ago. And despite plaintiffs' arguments to the contrary, there is no credible threat of reinstatement. Again, during the surges of COVID cases in the fall of 2020 and winter of 2021—when a vaccine was not readily available—the state did not attempt to reinstate its orders on religious activities at all. Illinois did not "move the goalpost" for religious activities during the worst months of the pandemic. There is no reason to assume it would do so now, when 49%

---

[3] The order was set to expire on April 15, 2021; the Supreme Court issued its opinion on April 9, 2021.

of Illinoisans are fully vaccinated, the state has fully reopened, and the pandemic appears to be under control.

Plaintiffs next argue that the Seventh Circuit's decision constitutes the law of the case and prevents this court from finding the case moot. See Jarrard v. CDI Telecom., Inc., 408 F.3d 905, 912 (7th Cir. 2005). Defendant responds with its own law-of-the-case argument: that the Supreme Court declined to hear the case because Order 32 was no longer in effect (arguably, that the case was moot). Focusing on plaintiffs' argument, and as noted above, the Seventh Circuit's opinion stated that the case was not moot at that time because it was "not absolutely clear that the terms of [Order 32] will never be restored." Id. at 345 (internal citations omitted). The Seventh Circuit's decision came out a mere 18 days after defendant issued Order 38. At that time, the prospect of moving the goalpost, of returning to earlier phases and imposing restrictions, was arguably possible. Much has changed since the Seventh Circuit's statement. After 15 months, the Governor's statements, and the Governor's behavior during the second surge, the likelihood that the Governor would reinstate the restrictions on religious services is highly remote.[4]

For the reasons stated above, it is absolutely clear that the alleged wrongful behavior—restrictions on religion due to the COVID-19 pandemic—are not reasonably expected to recur. It is clear to the court that this case is moot and has been for some time. Defendant's motion to dismiss on this basis is granted.

Finally, defendant argues that any claim for nominal damages is barred by sovereign

---

[4] Plaintiffs' final argument is that they are contesting the Governor's "tyrannical scheme" as a whole, and therefore the case is not moot. This argument is a nonstarter. In the complaint and throughout the duration of this case, plaintiffs complain only about the ten-person restriction on religious activity. Even if the court interpreted the allegations broadly, to encompass COVID-19 restrictions on religion generally, the analysis would be the same. Plaintiffs have not alleged any injury resulting from the scheme as a whole, nor could they with any serious credibility.

8

immunity and qualified immunity. See McDonough Assocs, Inc. v. Grumloh, 722 F.3d 1043 (7th Cir. 2013); Kemp v. Liebel, 877 F.3d 346, 350 (7th Cir. 2017). Plaintiffs make no arguments in response and have therefore waived objections to defendant's position. The court agrees with defendant's analysis in his brief and dismisses plaintiffs' claims for damages.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss (Doc. 67) is granted in its entirety.

ENTER:

**Robert W. Gettleman
United States District Judge**

**DATE: July 26, 2021**